Filed 6/14/22  Clemons v. Gillespie CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| VAN ROY CLEMONS, JR., | D079382 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00045077-CU-OR-NC) |
| KIMBERLY GILLESPIE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

G10 Galuppo Law and Daniel T. Watts, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Van Roy Clemons, Jr. appeals from an order granting Kimberly Gillespie's motion to set aside a default judgment against her under Code of Civil Procedure section 473, subdivision (b).[1]  We find no abuse of discretion and affirm the order.

---

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

Clemons and Gillespie were in a dating relationship from 2006 to 2020. When they began their relationship, Clemons was 74 years old and Gillespie was 45 years old. In 2010, Clemons purchased a home in his own name on Dusk Drive in San Diego. According to Gillespie, Clemons purchased the home for her, and they had an understanding it would be her property. Clemons disputes this and contends the property is solely his.

Gillespie moved into the home and began operating a daycare center there. Her two daughters and a granddaughter also lived with her in the home.

In 2012, Clemons executed a grant deed transferring the property from himself as his sole and separate property to himself and Gillespie as joint tenants. Clemons asserts that Gillespie took advantage of their close relationship and fraudulently induced him into signing the deed by misrepresenting that it only allowed her to live in the house temporarily as a tenant. Gillespie disputes this and contends the property was always intended to be hers.

After their dating relationship ended in 2020, a dispute arose over ownership of the property. Clemons's attorney called Gillespie and wrote her a demand letter threatening litigation and asking her to sign a quitclaim deed and vacate the home. Clemons began posting eviction notices on the front door, which Gillespie ignored. He also gave her a COVID-19 hardship declaration, which she refused to sign. Clemons insisted that Gillespie sign the property over to him so that he could sell it. Gillespie refused. Clemons showed up at the house unannounced several times, demanding that she sign it over to him and saying that he was moving in. Gillespie contends that Clemons shoved her on one such occasion, and on a few other occasions, she

woke up to find him hovering over her after he had let himself into the property.

On December 7, 2020, Clemons filed this action against Gillespie and the other residents of the home,[2] alleging claims for financial abuse of an elder, quiet title, breach of oral contract, breach of fiduciary duty, cancellation of the 2012 grant deed, negligence, fraud, ejectment, and declaratory relief.

On December 18, 21, and 22, 2020, a process server tried to serve the summons and complaint personally on Gillespie and the other defendants at the Dusk Drive property. On each occasion, no one answered the door.

On December 23, 2020, the process server tried again. This time, an adult female occupant of the home answered the door but refused to give her name. The process server left the summons, complaint, and other documents with the unidentified occupant, informed her of the general nature of the documents, and instructed her to deliver the documents to Gillespie and the other defendants.

The next day, December 24, 2020, the process server mailed another copy of the summons, complaint, and other documents from her San Diego business address to each of the defendants by first class mail at the Dusk Drive address. The documents included a notice of hearing of a civil case management conference on May 21, 2021.

The summons stated in relevant part: "NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below. [¶] You have 30 CALENDAR DAYS after this summons and legal papers are served on you to

---

[2] The three other defendants—Gillespie's daughters and granddaughter—are not parties to this appeal.

file a written response at this court and have a copy served on the plaintiff. . . . Your written response must be in proper legal form if you want the court to hear your case. . . . If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court."

According to Gillespie, she did not recall receiving a copy of the summons, complaint, and other documents that were left at the home on December 23, 2020. However, she did admit receiving the mailed copies of these documents "sometime in December 2020." The parties do not dispute that Gillespie was properly served by substitute service. (§ 415.20.)

On January 4, 2021, Clemons sent Gillespie what she characterized as a threatening text message, and she decided to seek a domestic violence restraining order against him. Clemons did not file any written response to her petition. The matter was heard on January 19, 2021. Clemons testified on his own behalf and denied Gillespie's allegations. The court found Gillespie credible and granted a one-year restraining order.

Gillespie and her codefendants did not answer Clemons's civil complaint. On February 3, 2021, Clemons filed a request for entry of default against all four defendants, along with a proof of service by first class mail on Gillespie and the other defendants collectively at the Dusk Drive address. The clerk entered default the same day. According to Gillespie, she personally checked and opened all mail addressed to her at the Dusk Drive address, but did not receive the request for entry of default in the mail.

On February 11, 2021, Clemons filed a request for court judgment against all four defendants. The request included a sworn declaration that it was sent by first class mail to Gillespie and the other defendants collectively

4

at the Dusk Drive address.  According to Gillespie, she did not receive this document in the mail either.

The court set a default prove-up hearing for March 19, 2021, then continued it to March 24, 2021.  After hearing testimony from Clemons, the court entered judgment against Gillespie and the other defendants on March 24, 2021.

The judgment quieted title to the property in favor of Clemons, declared him to have been the sole owner since December 3, 2010, cancelled and declared void the 2012 grant deed, issued a mandatory injunction ejecting Gillespie and her codefendants from the property, awarded monetary damages of $20,000 against Gillespie for breach of oral contract, found Gillespie liable for financial abuse of an elder, breach of fiduciary duty, negligence, and fraud, and awarded attorney fees and costs against Gillespie in an amount to be determined later.

Clemons submitted a writ of possession of real property, which recited the terms of the judgment entered by the court on March 24, 2021.  The clerk issued the writ of possession on April 21, 2021.

At some point, Gillespie decided to retain counsel and scheduled an appointment with attorneys at Garmo & Garmo for April 29, 2021.  The attorneys then reviewed the register of actions and informed Gillespie that a default judgment had already been entered against her.  Gillespie was shocked to learn of the default judgment.

Gillespie's attorneys filed an ex parte application for an order staying execution of the judgment on May 4, 2021.  The court denied the application without prejudice the next day.  The same day (May 4), Gillespie's counsel obtained a hearing date of June 25, 2021 for a motion to set aside the default and default judgment.

5

On May 21, 2021, Gillespie filed her motion to set aside the default and default judgment based on "mistake of fact" and "excusable neglect" under section 473, subdivision (b). In a supporting declaration, Gillespie admitted she had received the mailed copy of the summons and complaint and other documents "sometime in December 2020," that she "looked through them" and "did not understand most of what was in them," but that she "did notice that there was a notice of court hearing to be held on May 21, 2021."

Gillespie explained: "My only prior experience with court was the restraining order I had filed against [Clemons]. At the time I received the Summons and Complaint in the mail, I thought that all I needed to do to respond to the Complaint was appear in court on May 21, 2021. I didn't know that I had to file any documents with the court to respond to the Complaint. In the restraining order matter, [Clemons] did not file any documents with the court, but simply appeared at the hearing. This is why I mistakenly believed that I needed to respond by attending the May 21st hearing."

While Gillespie's motion was pending, the sheriff executed the writ of possession and returned possession of the property to Clemons on June 7, 2021. With her reply brief below, Gillespie submitted another declaration stating: "At this point, since I've already moved, I do not want to repossess the Property. I only want[] what I am entitled to, which is a partial share of the equity value of the Property."

The trial court granted Gillespie's motion to set aside the default and default judgment. The court acknowledged it was a "close question," but ruled "Gillespie has met her burden of showing that she failed to respond to the summons and complaint due to mistake and/or excusable neglect." Based on Gillespie's reply declaration disclaiming any interest in repossession,

6

however, the trial court granted the motion on the following terms: "[T]he Court will limit Kimberly Gillespie to the following: (1) she may contest plaintiff's claims for money damages against her; (2) she may assert her own claim(s) for money damages (including her claimed partial share of the equity of the property); but (3) she may not contest title to the property, or possession of the property, or seek to interfere with a sale of the property. In essence, the case will be a case about money, and not about title or possession to the property. [Clemons] will continue to have title to the property, as set forth in the default judgment."

Clemons appeals the order granting Gillespie's motion to set aside the default and default judgment.[3]

## DISCUSSION

Section 473, subdivision (b) provides in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

" '[T]he provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits.' " (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 256.) " '[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.' " (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371-372.)

---

[3] Gillespie did not file a respondent's brief, and the parties have waived oral argument. Accordingly, we decide the appeal on the record and the opening brief. (Cal. Rules of Court, rule 8.220(a)(2).)

7

A ruling setting aside a default judgment will not be reversed on appeal absent a clear abuse of discretion.  (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854.)  "[A] trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 (*Elston*).)  "[A]ppellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made."  (*Weitz*, at p. 854.)

"Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted." (*Elston*, *supra*, 38 Cal.3d at p. 233.)  "In such situations, 'very slight evidence will be required to justify a court in setting aside the default.' " (*Ibid*.; see also *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 ["when a party in default moves promptly to seek relief, very slight evidence is required to justify a trial court's order setting aside a default"].)

A party seeking relief under section 473 based on mistake or neglect must demonstrate that the mistake or neglect was excusable.  (*Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1146.)  A mistake or neglect is excusable if a reasonably prudent person under the same circumstances might have made the same error.  (*Ibid*.; see also *Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276.)

Clemons argues that Gillespie's failure to answer the complaint in a timely manner was not excusable because she acknowledged receiving the complaint and summons in the mail; the summons clearly stated that she had 30 days to file a written response; she did not claim she was unable to read the summons; and she acknowledged reading the notice of hearing scheduled for May 21, 2021.  Clemons cites several California cases holding

8

that the defendant's mere failure to read a summons was not excusable. (*Gilio v. Campbell* (1952) 114 Cal.App.2d Supp. 853, 857; *Essig v. Seaman* (1928) 89 Cal.App. 295, 298-300; *Gillingham v. Lawrence* (1909) 11 Cal.App. 231, 233-234; *Garner v. Erlanger* (1890) 86 Cal. 60, 63.)

In this case, however, there is an additional element of mistake or neglect that was not present in the cases cited by Clemons. According to Gillespie's declaration, she assumed all she needed to do to respond to the complaint was appear at the May 21, 2021 hearing referred to in the notice of hearing that was served with the summons, because that is how the proceeding was handled for her domestic violence restraining order. We must presume that the trial court found this explanation to be credible in granting Gillespie's request for relief. (*Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 492 [reviewing court defers to trial court's implied credibility findings in reviewing order granting relief under § 473, subd. (b)].) We must also presume that the trial court found credible Gillespie's sworn statements that she did not receive the mailed copies of the February 3, 2021 request for entry of default or February 11, 2021 request for court judgment, and did not learn of the default until she met with counsel on April 29, 2021.

In these unique circumstances, it was for the trial court in the exercise of its broad discretion to decide whether Gillespie's mistake or neglect was excusable. Although we agree with the trial court that this is a close question, we cannot find a clear abuse of discretion in light of the strong policy favoring trial on the merits, the evidence of Gillespie's mistake or neglect beyond just failing to read the summons, the absence of any prejudice to Clemons in asserting his claims, the principle that section 473, subdivision (b) must be liberally construed and doubts resolved in favor of granting relief, and the fact that Gillespie acted diligently by moving to stay execution of the

9

judgment and getting a hearing date for her motion to set aside the default promptly after learning of it. (*Elston, supra*, 38 Cal.3d at pp. 233-234.)

We are not persuaded by Clemons's argument that Gillespie's motion should have been denied because the proposed answer she submitted along with it was unverified and unsigned.[4] Section 473, subdivision (b) states that the application for relief "shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted . . . ." Gillespie complied with this statute by submitting a copy of her proposed answer. Nothing in the statute says that the proposed answer must be signed or verified.

Even if it did, however, " 'courts have held substantial compliance to be sufficient.' " (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 933-934 [finding substantial compliance with requirement that proposed pleading be submitted with application even though party seeking relief under § 473, subd. (b) failed to include any proposed memorandum in opposition to previously granted summary judgment motion].) Because Clemons did not include the proposed answer in the appellate record, we must presume that it satisfied the "limited purpose" of this statutory provision, which is merely to ensure that relief is not being sought to delay the proceedings and the moving party is acting in good faith.

---

[4] Gillespie's proposed answer is not included in the appellate record. Clemons asserts that Gillespie "lodged" the answer instead of either filing it or attaching it to a filed document, "so it cannot appear in the clerk's transcript." However, the California Rules of Court permit lodged documents and exhibits to be designated and included in the clerk's transcript. (Cal. Rules of Court, rules 8.122(a)(3), (b)(3)(A), (b)(3)(B).) Clemons designated Gillespie's May 21, 2021 notice of lodgment for inclusion in the clerk's transcript, but did not take any steps to cure its omission after the clerk's transcript was filed.

(*Ibid.*; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].)

We also reject Clemons's claim of inconsistency in the terms upon which the trial court set aside the judgment. As the trial court noted, the statute gives the court authority to grant relief "upon any terms as may be just." (§ 473, subd. (b).) This provision gives courts broad authority to impose "reasonable conditions to avoid prejudice or unfairness to plaintiff." (*Goya v. P.E.R.U. Enterprises* (1978) 87 Cal.App.3d 886, 894 (*Goya*) [construing parallel language of § 473.5, subd. (c)]; see, e.g., *Reeves v. Hutson* (1956) 144 Cal.App.2d 445, 448-449 [trial court conditioned order setting aside default on (1) defendants' payment of plaintiff's attorney's fees and costs; (2) defendants' production of corporate books and records; and (3) restraint on pretrial transfer of assets by defendants].) We review the court's imposition of conditions for an abuse of discretion. (*Goya*, at pp. 894-895.)

In his opposition to Gillespie's motion to set aside the default judgment, the only prejudice Clemons claimed was that Gillespie had been evicted from the home, he had already taken possession and recorded the judgment restoring title to him, and setting aside the judgment would put a cloud on the title. In her reply, Gillespie disclaimed any interest in regaining possession of the property and essentially elected to seek only monetary damages.

In these circumstances, the trial court did not abuse its broad discretion by imposing conditions to prevent the very prejudice Clemons was asserting. Specifically, the court granted relief on the condition that Gillespie would be limited to seeking monetary remedies, not title to or possession of

11

the property, and Clemons would continue to hold title to the property going forward. These conditions eliminated the only prejudice Clemons asserted he would suffer from an order setting aside the default judgment. Thus, they were "reasonable conditions to avoid prejudice or unfairness to plaintiff."[5] (*Goya*, *supra*, 87 Cal.App.3d at p. 894.)

Clemons argues that the court's order is internally inconsistent because the default judgment on his claim for quiet title stated that the property had been "his sole and separate Property since he bought it on or around December 3, 2010" and "Defendants do not have, and have never had, any legal or equitable right, title, estate, lien, or interest in the Property adverse to Plaintiff's title." But the trial court clearly intended to set aside these portions of the default judgment so that Gillespie could pursue a claim for monetary damages for her claimed share of the equity. By its order, the court merely ruled that Gillespie would not be allowed to seek formal title to the property, and Clemons would continue to hold title going forward. In other words, the trial court effectively honored Gillespie's election of a monetary remedy for the alleged taking of her share of the property to eliminate the prejudice claimed by Clemons. We see no inconsistency.

Finally, Clemons asserts that Gillespie failed to demonstrate she had a "substantial defense" to his claims. Clemons did not make this argument in the trial court, so it is forfeited. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.) In any event, we reject the premise of Clemons's

---

[5]     Clemons does not argue that the trial court lacked authority to leave part of the default judgment in place (the part awarding him title) as a condition of setting aside the rest of the judgment. Because the issue has not been raised, we do not reach it. We observe, however, that the court could have reached essentially the same result by setting aside the entire default judgment, but on the condition that Gillespie would be barred from contesting Clemons's title or seeking title for herself.

argument. Gillespie's statement that she no longer wished to obtain physical possession of the property was not an admission that she never had an ownership interest in it.

## DISPOSITION

The order of June 25, 2021 setting aside the default and default judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.